Brian ROSELL and Annette Kienetz, individually and as representatives of the estate of Chad Rosell, Decedent, Appellants,

v.

CENTRAL WEST MOTOR STAGES, INC. d/b/a Central West of Texas, Inc., Loyd Earl Rieve, and Karen Bay, Appellees.

No. 05–01–00198–CV.

Court of Appeals of Texas, Dallas.

Aug. 22, 2002.

Rehearing Overruled Oct. 23, 2002.

Thomas B. Cowart, William J. Dunleavy, Law Office of Windle Turley, P.C., Dallas, for appellants.

Britton Byron Harris, Brown & McCarroll, L.L.P., Houston, Eric Gordon Walraven, Godwin Gruber, P.C., Dallas, Robert Fugate, Fanning, Harper & Martinson, P.C., Dallas, for appellees.

Before Justices O'NEILL, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

In eight issues, Brian Rosell and Annette Kienetz, individually and as representatives of the estate of Chad Rosell, decedent (the Rosells), challenge a take-nothing judgment against them in their wrongful death and survival action against Central West Motor Stages, Inc. d/b/a Central West of Texas, Inc. (Central West), Loyd Earl Rieve, and Karen Bay. They contend that the trial judge was constitutionally unqualified to preside at the trial because his law license was suspended due to nonpayment of bar dues; the trial court erred in submitting improper liability and apportionment questions in the charge and refusing to submit instructions regarding the "Good Samaritan" and rescue doctrines; the trial court erred in including Chad in the negligence question; the evidence was factually insufficient to support the jury's apportionment of responsibility; the judgment should have included a punitive damages award; and the verdict was the result of an improper outside influence. For the reasons below, we resolve the Rosells' issues against them and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of January 31, 1998, Karen Bay's car collided with a retaining wall on Interstate Highway 35. Bay got out of the car and was lying in the lane immediately adjacent to the HOV lane. Chad Rosell was among those who stopped and got out of his car to assist Bay. Loyd Rieve was driving a Central West bus and attempted to pass the accident in the HOV lane. He was driving at least fifty miles per hour as he passed the accident scene. The bus struck Chad in the HOV lane, killing him.

The Rosells alleged that Rieve was negligent in his operation of the bus and that Central West was liable for its own negligence for hiring and retaining an incompetent driver, failing to supervise Rieve properly, and in entrusting the bus to Rieve. The Rosells also sued Bay.

The trial court refused to include Central West in the apportionment question, limiting the question to the negligence of Rieve, Bay, and Chad. The jury found that the Rosells suffered $809,312.96 in actual damages, found Central West guilty of gross negligence, and awarded $1,250,000.00 in punitive damages. The jury apportioned fault for Chad's death as follows: seventy percent to Chad, twenty percent to Rieve, and ten percent to Bay. Pursuant to section 33.001 of the Texas Civil Practice and Remedies Code, the trial court rendered a take-nothing judgment

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

against the Rosells. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.001 (Vernon 1997) (comparative responsibility statute). The Rosells moved for a new trial contending, among other issues, that the Honorable Bill Rhea was not qualified to preside at the trial and that the jury was subject to an outside influence. The Rosells' motion for new trial was denied. They appealed.

## QUALIFICATION OF THE TRIAL JUDGE

█ In the Rosells' first issue, they contend that the trial judge was not a judge as required by the Texas Constitution and therefore, the judgment rendered by the judge must be set aside. Appellees respond that the judgment should not be set aside because: (1) the Rosells waived this complaint by failing to object at or before trial; (2) failure to pay bar dues is not a ground for disqualification of a sitting judge under the Texas Constitution; (3) public policy should not allow a trial court's judgment to be nullified for a technical violation of the State Bar's rules on payment of bar dues; and, (4) even if a constitutionally qualified judge were not present at trial, the judgment should not be reversed without evidence that such presence would have brought about a different result.

The Rosells do not dispute that the trial judge was qualified to hold the office of judge at the previous election. Subsequently, the trial judge's license to practice law was suspended on September 1, 2000 for failure to pay bar dues. The suspension lasted until October 30, 2000, when he was restored to good standing with the State Bar retroactive to September 1, 2000. This case was litigated from Octo-

ber 2, 2000 until the verdict was returned on October 10, 2000. The final judgment was signed by the judge on November 16, 2000. No objection to the trial judge was made until the motion for new trial, in which the Rosells complained that the "jury verdict was improper in that the presiding judge at trial was not qualified by law to preside in that at the time of trial, the presiding judge did not possess a valid license to practice law in the State of Texas as required under the Texas Constitution."

█ The Texas Constitution states that a district judge:

shall be elected by the qualified voters at a General Election and shall be a citizen of the United States and of this State, *who is licensed to practice law in this State* and has been a practicing lawyer or a Judge of a Court in this State, or both combined, for four (4) years next preceding his election, who has resided in the district in which he was elected for two (2) years next preceding his election, and who shall reside in his district during his term of office and hold his office for the period of four (4) years. . . .

Tex. Const. art. V, § 7 (emphasis added). Judges may be removed from a particular case because: (1) they are constitutionally disqualified, Tex. Const. art. V, § 11[3]; (2) they are subject to a statutory strike, Tex. Gov't Code Ann. § 74.053(d) (Vernon 1998); or, (3) they are recused under rules promulgated by the Texas Supreme Court, Tex.R. Civ. P. 18a, 18b; Tex.R.App. P. 16. *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex.1998) (orig. proceeding). If a judge is disqualified under the Constitution or subject to disqualification under

---

**3.** Article V, section 11 provides in part: "No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, ei-

ther by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case." Tex. Const. art. V, § 11.

section 74.053(d) of the government code, he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to collateral attack. *Id.; Gulf Maritime Warehouse Co. v. Towers,* 858 S.W.2d 556, 559 (Tex.App.-Beaumont 1993, writ denied) (citing William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges,* 17 St. Mary's L.J. 599, 601–02 (1986)); *see Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982). However, the existence of statutory grounds for recusal of a judge does not void or nullify subsequent proceedings before that judge and can be waived if not raised by proper motion. *In re Union Pac. Res. Co.,* 969 S.W.2d at 428; *Gulf Maritime Warehouse Co.,* 858 S.W.2d at 559.

■■■ However, none of these provisions for removal are implicated in this appeal. Instead, the Rosells challenge the authority of a duly elected judge to preside over this trial because he lacked a law license during the period of the trial. In essence, the complaint was that the trial judge was no longer qualified to hold office. It is his authority to function as a district judge that is challenged. Contrary to the Rosells' contention, the authority of the person presiding over a court cannot always be attacked by way of appeal. *Davis v. State,* 956 S.W.2d 555, 559 (Tex. Crim.App.1997); *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 854–55 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). When a judge is holding office under the color of law and discharging his duties of office, his acts are conclusive as to all parties and cannot be attacked in an appeal, even though the person acting as judge lacks the necessary qualifications and is incapable of legally holding the office. *Ex parte Lefors,* 171 Tex.Crim. 229, 347 S.W.2d 254, 254–55 (1961); *Texaco, Inc.,* 729 S.W.2d at 854. An appeal is not

the proper procedure to challenge the authority of a judge to hold office and perform his duties. *Texaco,* 729 S.W.2d at 854; *see Snow v. State,* 134 Tex.Crim. 263, 114 S.W.2d 898, 901 (1937) (op. on reh'g) (de jure judge or de facto judge claiming office by color of law, and actually performing duties of such officer, cannot be ousted, or his official acts successfully challenged, except in direct proceeding to which he is party). The recognized procedure for determining whether an elected judge or other public official has done any act that by law works a forfeiture of his office is through a *quo warranto* proceeding brought in the name of the State of Texas by the Attorney General or the district or county attorney of the proper district or county. *Texaco, Inc.,* 729 S.W.2d at 854 (citing *Lewis v. Drake,* 641 S.W.2d 392, 393 (Tex.App.-Dallas 1982, orig. proceeding)). This Court has endorsed this procedure for public policy reasons:

> Public officers should be free to perform their duties without having their authority questioned incidentally in litigation between other parties. They should not be called on to defend their authority unless a proper legal officer of the State has determined that the question raised is serious and deserves judicial consideration....

*Lewis,* 641 S.W.2d at 395. Further, a judge who holds office under color of title of election is considered a de facto official even if all the legal requirements for holding office are no longer met. *See Snow,* 114 S.W.2d at 901. "A judge de facto is a judge de jure to all parties except the state, and his official acts, before he is ousted from office, are binding on third persons and the public." *Id.* (citation omitted).

Two other courts have dealt with objections to a judge's authority when the judge had not paid bar dues. In *Ex parte Le-*

*fors*, 347 S.W.2d at 255 (citing *Snow*, 114 S.W.2d at 901), the court of criminal appeals recognized that the only way to attack a judge's ability to hold office was through a *quo warranto* proceeding. Nevertheless, the court went on to observe that payment of dues and being a member in good standing of the State Bar of Texas throughout the term of office were additional requirements not required by the Texas Constitution. *Id.* The court then found that the trial judge had authority to act. In *Brosseau v. Ranzau*, 28 S.W.3d 235, 237 (Tex.App.-Beaumont 2000), *op. withdrawn on reh'g in part on other grounds*, 81 S.W.3d 381, 400–01 (Tex.App.-Beaumont 2002, pet. filed), the Beaumont Court of Appeals, following *Ex parte Lefors*, held that the fact that the judge was not a member in good standing with the State Bar of Texas did not constitutionally disqualify him from sitting as a district judge "with all power and authority afforded his office." The Beaumont court, relying on article V, section 11 of the Texas Constitution, reasoned that neither payment of dues nor a license to practice law was specifically provided as a constitutional reason for removing a judge from a case. *Id.*

 Each of these cases made a determination on the merits of the disqualification claim. Nevertheless, we conclude that contesting a judge's qualifications to hold office is not a proper issue for appeal. *See Ex parte Lefors*, 347 S.W.2d at 255; *Snow*, 114 S.W.2d at 901; *Texaco*, 729 S.W.2d at 854. An appeal contesting an elected judge's authority to act in a case is a collateral attack on a judge's ability to hold office that is proper only in a direct *quo warranto* proceeding.[4] Additionally, as long as a duly elected judge is holding office under color of law, his actions will be binding on the parties and subject to appeal as in any other lawsuit. We resolve the Rosells' first issue against them.

### THE CHARGE TO THE JURY

In the Rosells' second, third, and fifth issues, they complain about the charge and

---

4. In *Wilson v. State*, 977 S.W.2d 379, 380 (Tex.Crim.App.1998), the court of criminal appeals questioned whether it was realistic to require a defendant to initiate a *quo warranto* proceeding when challenging the authority of a judge. The issue involved a procedural irregularity in the appointment of a former judge. At the time of trial, the judge's assignment had expired. The court of criminal appeals held that the defendant must object pretrial to preserve the error to challenge the authority of a trial judge who is otherwise qualified. *Id. Wilson* involved the authority of a former judge under an assignment, not the qualifications of an elected judge to hold office. As noted by the concurrence, elected judges have been treated differently from assigned judges *Id.* at 381 (Keller, J., concurring). Objections to an elected judge at trial have not been sufficient to challenge the qualifications or authority of the judge. *Id.* "Holding that an objection preserves a complaint in these circumstances [i.e., challenging an elected or retired judge] is contrary to the entire body of civil case law." *Id.* at 382.

The cases applying *Wilson* have involved the assignments of former or retired judges. *See, e.g., In re Gen. Elec. Capital Corp.*, 63 S.W.3d 568, 572 (Tex.App.-El Paso 2001, orig. proceeding [applic. for mand. filed]); *Beard v. Beard*, 49 S.W.3d 40, 50 n. 3 (Tex.App.-Waco 2001, pet. denied); *Lopez v. State*, 57 S.W.3d 625, 628–29 (Tex.App.-Corpus Christi 2001, pet. ref'd); *Zarychta v. State*, 44 S.W.3d 155, 164–65 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd), *cert. denied*, —— U.S. ——, 122 S.Ct. 2312, 152 L.Ed.2d 1066 (2002); *Sparkman v. State*, 55 S.W.3d 625, 630 (Tex.App.-San Antonio 2000, no pet.); *Sparkman v. State*, 997 S.W.2d 660, 663 (Tex.App.-Texarkana 1999, no pet.); *Prieto Bail Bonds v. State*, 994 S.W.2d 316, 317 (Tex.App.-El Paso 1999, pet. ref'd). Therefore, we conclude the procedure of requiring a pretrial objection applies only to the procedural challenges to judges sitting by assignment that are otherwise qualified. *Wilson* does not apply to a challenge to a district judge's authority to function as a district judge.

instructions to the jury. The Rosells contend that Central West should have been included in the liability and apportionment questions because the pleadings and evidence support its negligent entrustment as a proximate cause of the accident. They also contend that the trial court erred in refusing to submit instructions on the "Good Samaritan" and rescue doctrines.

### Standard of Review

 Rule of civil procedure 278 requires the trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. *See* Tex.R. Civ. P. 278; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *Toles v. Toles,* 45 S.W.3d 252, 263 (Tex.App.-Dallas 2001, pet. denied). The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Id.* This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. *Wright Way Constr. Co. v. Harlingen Mall Co.,* 799 S.W.2d 415, 422 (Tex.App.-Corpus Christi 1990, writ denied) (op. on reh'g). Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. Tex.R. Civ. P. 278; *Wright Way Constr. Co.,* 799 S.W.2d at 422. When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal–Mart*

*Stores, Inc. v. Middleton,* 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied).

 To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety to determine if the trial court abused its discretion. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986) (op. on reh'g); *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 722 (Tex.App.-Dallas 1997, no writ). A reversal is warranted when the trial court denies a proper submission of a valid theory of recovery raised by the pleadings and evidence. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992) (per curiam). Otherwise, we do not reverse unless harm results. *See Lone Star Gas Co. v. Lemond,* 897 S.W.2d 755, 756–57 (Tex.1995) (per curiam). For harm to result, the error must probably cause the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1).

### Liability Submission

 In their second issue, the Rosells complain that Central West was not included in the initial liability question about the occurrence. Question 1 asked if the negligence of Rieve, Bay, or Chad proximately caused the occurrence.[5] The trial court also submitted Question 5, which asked the jury if Central West was negligent in hiring and in entrusting the vehicle to Rieve.[6] At trial, the Rosells objected,

---

**5.** Question 1. Did the negligence, if any, of the persons named below proximately cause the occurrence in question? Answer "Yes" or "No" as to each of the following.
 (a) Loyd Rieve
 Answer: /yes/
 (b) Karen Bay
 Answer: /yes/

 (c) Chad Rosell
 Answer: /yes/

**6.** Question 5. Do you find from a preponderance of the evidence that [Central West] was negligent in any of the following:

 1. Negligently hiring Loyd Rieve

contending that Central West should be included in Question 1. They claim that not including Central West in Question 1 was a violation of rule 277, which requires a broad form submission of questions.

Central West and Bay respond that the liability questions submitted were not erroneous. They contend that because Central West stipulated that Rieve was acting within the scope of his employment, Central West would be liable for its employee's negligence, and, therefore, inclusion of Central West in the negligence charge was not necessary. They argue that the case law shows that negligent entrustment liability is derivative in nature and is duplicative of respondeat superior for the negligence issue. While they acknowledge that entrusting and hiring are separate acts of negligence, they contend that these acts are not relevant except for a gross negligence claim.

 Where only ordinary negligence is alleged, the case law supports appellees' contention that negligent hiring

> You are instructed that [Central West] may be liable for negligent hiring if [Central West] employed an incompetent servant whom it knew or by exercise of reasonable care should have known was incompetent or unfit, thereby creating unreasonable risk of harm to others.
> Yes_____ No ____ ✓_____
> 2. Negligently retaining Loyd Rieve
> You are instructed that [Central West] may be liable for negligently retaining Mr. Rieve if [Central West] retained in its employ an incompetent servant whom it knew was incompetent or unfit, thereby creating unreasonable risk of harm to others.
> Yes____ ✓____ No_____
> 3. Negligent entrustment
> You are instructed that negligent entrustment, when used with respect to [Central West,] means entrusting a vehicle to a reckless driver if the entrustor knew or should have known that the driver was reckless.
> Yes____ ✓____ No_____

7. The suggested charge is:

or negligent entrustment and respondeat superior are mutually exclusive modes of recovery. *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.). Where the plaintiff has alleged ordinary negligence against the driver and gross negligence against the owner for entrusting his vehicle to a reckless or incompetent driver, the negligent entrustment cause of action would be an independent and separate ground of recovery against the owner for exemplary damages. *Id.* at 178–79. West stipulated that Rieve was acting within the scope of his employment. Accordingly, Central West's liability for ordinary negligence was established under the doctrine of respondeat superior. However, the Rosells alleged gross negligence against Central West, entitling them to questions concerning Central West's negligent entrustment, hiring, supervision, and retention.

The Texas Pattern Jury Charge suggests a broad form question.[7] The pattern

> As to *Edna Entrustor,* "negligence" means entrusting a vehicle to a *reckless* driver if the entrustor knew or should have known that the driver was *reckless.* Such negligence is a proximate cause of a collision if the negligence of the driver to whom the vehicle was entrusted is a proximate cause of the collision.
> QUESTION _____
> Did the negligence, if any, of the persons named below proximately cause the occurrence in question?
> Answer "Yes" or "No" for each of the following:
> Answer the question as to *Edna Entrustor* only if you have answered "Yes" as to *David Driver.*
> a. *David Driver* _____
> b. *Edna Entrustor* _____
> c. *Paul Payne* _____
> COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS PJC 7.12

charge instructs that, if the entrustor was negligent in entrusting the vehicle, that negligence is the proximate cause of the accident if the driver to whom the vehicle was entrusted proximately caused the accident. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS PJC 7.12 (2000). The jury is then instructed that it can answer the question about the entrustor only if it has found the driver negligent. *Id.* Here, the jury charge contained a separate question concerning Central West's negligent entrustment after a determination of the liability of the driver.

Rule 277 is not absolute; rather, it mandates broad form submission "whenever feasible." *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 390 (Tex.2000) (op. on reh'g) (citing *Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex.1992)). Broad form is not always feasible when the law on a liability issue is unsettled. *Westgate,* 843 S.W.2d at 455 n. 6. When the trial court is unsure whether it should submit a particular theory of liability, separating liability theories best serves the policy of judicial economy underlying rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined. *Crown Life,* 22 S.W.3d at 390. Rule 277 implicitly requires the jury to be able to base its verdict on legally valid questions and instructions. *Id.* Thus, it may not be feasible to submit a broad form liability question that incorporates wholly separate theories of liability. *Id.* The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664 (Tex.1999). Toward that end, the trial court is accorded broad discretion so long as the charge is legally correct. *Id.*

The Rosells requested a liability question that proposed several theories under which Central West was liable. The first was based on entrusting a vehicle to a reckless driver. The second was based on employing an incompetent or unfit employee. The last was based on failing to adequately train, hire, or supervise an employee. While these theories are similar, they have different requirements. To successfully prosecute a claim of negligent hiring, supervision, or retention, a plaintiff is required to show that (1) the employer owed a legal duty to protect third parties from the employee's actions, and (2) the third party sustained damages proximately caused by the employer's breach of that legal duty. *See Houser v. Smith,* 968 S.W.2d 542, 544 (Tex.App.-Austin 1998, no pet.); *see also Estate of Arrington,* 578 S.W.2d at 178 (holding basis of responsibility for negligent hiring is master's own negligence in hiring or retaining incompetent servant whom master knows or by exercise of reasonable care should have known was incompetent or unfit, thereby creating unreasonable risk of harm to others). Proof of negligent entrustment requires: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) the driver's negligence on the occasion in question; (5) proximately caused the accident. *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 571 (Tex.1985).

The feasibility of including all of the theories of Central West's liability along with the negligence of the other parties may have led the trial court to submit separate questions on the negligent en-

(2000) (negligent entrustment—reckless, incompetent, or unlicensed driver).

trustment, hiring, supervision, and retention issues. Additionally, because Central West would be liable for its employee's negligence, there was no necessity for including Central West in the ordinary negligence liability question. With the trial court's separate question on Central West's independent negligence, the Rosells obtained the factual negligence determination for their gross negligence claims. The trial court's submission of liability to the jury was logical, simple, and clear. The submission fairly, correctly, and completely addressed the valid theories of recovery raised by the pleadings and evidence. Thus, there was no harm in the submission. Accordingly, the trial court did not abuse its discretion in submitting the separate liability issue. We resolve the Rosells' second issue against them.

### Apportionment

■ In their third issue, the Rosells contend that the trial court erred by refusing to allow the jury to consider the negligence of Central West in its apportionment question.[8] They argue that not including Central West in the apportionment of responsibility violated section 33.003 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE § 33.003 (Vernon 1997). Central West and Bay respond that because Central West's liability for ordinary negligence is a derivative action, it was proper to compare only the negligence of those directly involved in the incident. *See Loom Craft Carpet Mills, Inc. v. Gorrell,*

823 S.W.2d 431, 432 (Tex.App.-Texarkana 1992, no writ).

Section 33.003 provides:

The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

(1) each claimant;

(2) each defendant;

(3) each settling person; and

(4) each responsible third party who has been joined under Section 33.004.

TEX. CIV. PRAC. & REM.CODE § 33.003.

■ The Rosells contend that Central West should be included because it was a producing or contributing cause of the injuries to Chad. Although negligent entrustment and negligent hiring are considered independent acts of negligence, these causes are not actionable unless a third party commits a tort. *See Loom Craft Carpet Mills, Inc.,* 823 S.W.2d at 432. In that respect, these causes are similar to the respondeat superior theory of recovery where, unless the employee commits a tort in the scope of employment, the employer has no responsibility. In reviewing the application of section 33.003 to responsibility, we observe that, while

---

**8.** Question 2 was predicated on an affirmative answer to more than one part of Question 1. Question 2 provided:

> What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you to have been negligent?
>
> The percentages you find must total 100 percent. The negligence attributable to a

person named below is not necessarily measured by the number of acts or omissions found.

| | | |
|---|---|---|
| (a) Loyd Rieve | | /20/% |
| (b) Karen Bay | | /10/% |
| (c) Chad Rosell | | /70/% |
| | Total | 100% |

the statute on its face requires all defendants to be included in the apportionment question, it would not be proper for an employer to be included along with the driver if its only responsibility was that of respondeat superior. Section 33.003 has not been used to require both a driver and employer to be submitted in the apportionment question in that situation.[9]

 Similarly, the causes of action for negligent entrustment and hiring are a means to make a defendant liable for the negligence of another. Once negligent hiring or entrustment is established, the owner/employer is liable for the acts of the driver, and the degree of negligence of the owner/employer is of no consequence. *See Loom Craft Carpet Mills,* 823 S.W.2d at 432; *Estate of Arrington,* 578 S.W.2d at 178. Thus, because Rieve's negligence would be passed on, it was proper to apportion fault among those directly involved in the accident. *See Loom Craft Carpet Mills,* 823 S.W.2d at 432; *Estate of Arrington,* 578 S.W.2d at 178. Accordingly, we resolve the Rosells' third issue against them.

### Rescue and "Good Samaritan" Instructions

In their fifth issue, the Rosells contend the trial court erred when it failed to instruct the jury on the "Good Samaritan" and rescue doctrines. Central West responds that the Rosells waived the issue by not obtaining the trial court's notation on their submitted instruction. Both Central West and Bay argue that the refusal

**9.** The Rosells argue that the 1995 amendments to section 33.003 require all negligent defendants to be included in the apportionment question. However, the 1995 amendments changed the percentage of a plaintiff's liability that prevented recovery and the percentage required to hold a defendant jointly and severally liable as well as allowing the defendant to add negligent third parties for

to submit the instructions was proper because the "Good Samaritan" statute did not apply and the emergency instruction submitted was sufficient.

### *Waiver*

 Rule 276 provides:

When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon "Refused," and sign the same officially.... [S]uch procedure shall entitle the party requesting the same to have the action of the trial judge thereon reviewed....

TEX.R. CIV. P. 276. However, the endorsement on the proposed charge is not the only means of obtaining a ruling under rule 276. *Dallas Mkt. Ctr. Dev. Co. v. Liedeker,* 958 S.W.2d 382, 387 (Tex.1997) (per curiam), *overruled in part on other grounds by Torrington Co. v. Stutzman,* 46 S.W.3d 829, 840 n. 9 (Tex.2000). Rule 276 allows for preservation of error by other means. *Id.* Here, the Rosells offered instructions and objected when the instructions were not submitted. The trial court overruled the objection. The objection and trial court's ruling on the objection were sufficient to preserve error. *See Southeastern Pipe Line Co. v. Tichacek,* 997 S.W.2d 166, 173 (Tex.1999).

### *"Good Samaritan" Statute*

 Section 74.001(a) of the Texas Civil Practice and Remedies Code provides:

apportionment. HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 28, 74th Leg., R.S. (1995). None of these changes are implicated in this case. The Rosells brought suit against all the defendants that they wanted in the apportionment charge. Thus, we will examine this charge under the case law that exists before and after 1995.

A person who in good faith administers emergency care, including using an automated external defibrillator, at the scene of an emergency but not in a hospital or other health care facility or means of medical transport is not liable in civil damages for an act performed during the emergency unless the act is wilfully or wantonly negligent.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a) (Vernon Supp.2002). The statute is designed to offer protection to the person who voluntarily administers emergency care. *Howell v. City Towing Assocs., Inc.,* 717 S.W.2d 729, 731 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.) (concluding telephoning or radioing for emergency medical assistance at scene of accident or emergency by tow truck driver not act included within meaning of "administering emergency care" as set out in statute). The statute lowers the standard of care to encourage both certain medically-trained persons and laypersons to render aid in emergency situations. *Hernandez v. Lukefahr,* 879 S.W.2d 137, 143 (Tex.App.-Houston [14th Dist.] 1994, no writ). This statute would protect Chad from liability for injuries he caused in providing emergency care to Bay. There is no evidence in the record that Chad administered emergency care that injured Bay for which Bay sought a recovery. Thus, the "Good Samaritan" statute does not apply to this case. Accordingly, the trial court properly refused submission of a "Good Samaritan" instruction.

### Rescue Doctrine

 The rescue doctrine applies when a defendant negligently creates a situation that necessitates a rescue effort.

*Snellenberger v. Rodriguez,* 711 S.W.2d 138, 139 (Tex.App.-El Paso 1986), *aff'd,* 760 S.W.2d 237 (Tex.1988). To hold an actor liable for his negligent actions, the rescuer's subsequent injuries must be reasonably foreseeable as a natural and probable result of such negligence. *Tri–State Wholesale Associated Grocers, Inc. v. Barrera,* 917 S.W.2d 391, 396–97 (Tex.App.-El Paso 1996, writ dism'd by agr.). The Rosells' requested instruction stated:

> You are instructed that a rescuer acting to save another from imminent peril is not negligent provided the peril was not caused by any action of the rescuer and so long as the rescuer does not act rashly or recklessly in effecting the rescue.

Thus, the Rosells' requested instruction was not to place responsibility on Bay for Chad's injuries but to relieve Chad of his contributory negligence. The use of the doctrine in this manner came into being before the adoption of comparative negligence to relieve the all or nothing effects of contributory negligence. *Snellenberger,* 760 S.W.2d at 237. Since the adoption of the comparative negligence statute, the supreme court has abolished doctrines directed to the old choice between "total victory and total defeat for the injured plaintiff." *French v. Grigsby,* 571 S.W.2d 867, 867 (Tex.1978) (per curiam) (abolishing "doctrine of last clear chance" and "discovered peril"); *see Davila v. Sanders,* 557 S.W.2d 770, 771 (Tex.1977) (per curiam) (abolishing "doctrine of imminent peril"). The use of the rescue doctrine as proposed by the Rosells falls into the category of instructions that have been abolished by the supreme court.[10] Now, when comparing negligence, rescuers are not

---

**10.** The Committee on Pattern Jury Charges of the State Bar of Texas believes that the traditional rescue doctrine should not be submitted by question or instruction because it is subsumed under comparative negligence.

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS PJC 4.3 cmt. (2000) (defensive theories subsumed under comparative negligence).

held to the same standard of reasonableness in an emergency situation as they would be if no emergency were present. *Tri–State Wholesale Associated Grocers, Inc.*, 917 S.W.2d at 397. The supreme court specifically did not discard the instruction on sudden emergency. *Davila*, 557 S.W.2d at 771. Here, the trial court instructed the jury:

> If a person is confronted by an **"emergency"** arising suddenly and unexpectedly, which was not proximately caused by any negligence on his part and which, to a reasonable person, requires immediate action without time for deliberation, his conduct in such an emergency is not negligence or failure to use ordinary care if, after such emergency arises, he acts as a person of ordinary prudence would have acted under the same or similar circumstances.

This instruction provided the jury with the opportunity to consider the emergency situation in evaluating Chad's actions. Because the Rosells' requested rescue instruction was not proper and the trial court's instruction stated the proper standard of care for the circumstances of this case, we conclude the trial court did not err in refusing to submit the Rosells' requested instruction.

Having concluded that the trial court's refusal the submit the "Good Samaritan" and rescue doctrine instructions was correct, we resolve the Rosells' fifth issue against them.

## SUFFICIENCY OF THE EVIDENCE

In their fourth issue, the Rosells contend that the evidence was legally insufficient to support submission of Chad's negligence. In their seventh issue, the Rosells contend that the jury's apportionment of seventy percent of the negligence to Chad is against the overwhelming weight of the evidence.

### Submission of Chad's Negligence

Trial courts are required to submit requested questions to the jury if the pleadings and any evidence support them. Tex.R. Civ. P 278. To determine whether legally sufficient evidence supported submission of Chad's negligence, we must examine the record for evidence supporting Chad's negligence and ignore all evidence to the contrary. *See Elbaor*, 845 S.W.2d at 243.

There was testimony that Chad moved into the HOV lane in front of the bus. There was testimony that other pedestrians were aware of the dark and dangerous conditions of the accident scene and that Chad was warned as the bus approached. Concluding that there was some evidence that Chad was negligent, we reject the Rosells' argument that this issue should not have been submitted to the jury. Accordingly, we resolve the Rosells' fourth issue against them.

### Percentage of Apportionment

The jury is given wide latitude in performing its sworn duty to serve as factfinder in allocating responsibility for an accident pursuant to section 33.003 of the civil practice and remedies code. Tex. Civ. Prac. & Rem.Code Ann. § 33.003; *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 126 (Tex.App.-Beaumont 2001, pet. denied). When reviewing a factual sufficiency challenge, we consider, weigh, and examine all of the evidence, and sustain the challenge only if the evidence is so weak as to render the jury's finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Even if the evidence could support a different percentage allocation of responsibility, an appellate court may not substitute its judgment for that of the jury. *Emmons*, 50 S.W.3d at 126 (citing

*Samco Props., Inc. v. Cheatham,* 977 S.W.2d 469, 478 (Tex.App.-Houston [14th Dist.] 1998, pet. denied)); *Humble Nat'l Bank v. DCV, Inc.,* 933 S.W.2d 224, 235 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *St. Paul Med. Ctr. v. Cecil,* 842 S.W.2d 808, 813 (Tex.App.-Dallas 1992, no writ).

As noted above, there was evidence that Chad was warned of the approaching bus but moved into the HOV lane in front of the bus. There was also testimony that he did not move into the HOV lane and that there was very little warning of the approaching bus. There was also contradictory evidence regarding Rieve's actions, that he took proper evasive action to avoid hitting Bay's car and that the bus approached the scene at a high rate of speed. Reviewing all the evidence, we conclude the evidence is factually sufficient to support findings of negligence. Because the evidence is factually sufficient, we do not substitute our judgment on apportionment for that of the jury. Consequently, we resolve the Rosells' seventh issue against them.

## OUTSIDE INFLUENCE AFFECTING JURY VERDICT

In the Rosells' sixth issue, they complain that they were entitled to a new trial because the jury's verdict was the result of outside influence. To prove this outside influence, they point to the affidavits of three jurors. Each testified that the bailiff told the jury that the trial court would require them to deliberate one more day, even after the jurors considered themselves deadlocked. As a result of this information, a juror agreed to change her vote on Rieve's negligence if others would make Chad's percentage of negligence greater than Rieve's. The jury then reached the verdict finding Chad would bear seventy percent of the fault.

Rule 327(b) of the Texas Rules of Civil Procedure and rule 606(b) of the Texas Rules of Evidence govern the jury misconduct asserted in this case. TEX.R. CIV. P. 327(b) (permitting juror to testify about improper "outside influence" on any juror but forbidding testimony on any matter or statement occurring during jury's deliberations or anything concerning emotions or mental processes); TEX.R. EVID. 606(b) (same). These rules provide that the only evidence of jury misconduct a trial court may consider is evidence tending to prove that an outside influence was brought to bear on a juror. *Wooten v. S. Pac. Transp. Co.,* 928 S.W.2d 76, 78–79 (Tex.App.-Houston [14th Dist.] 1995, no writ); *Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 271–72 (Tex.App.-El Paso 1994, writ denied). "Outside influence" means:

> a force external to the jury and its deliberations. Outside influence does not include information acquired by a juror and communicated to the others between the time the trial court instructs the jury and the time it renders a verdict, even where the information is not in evidence, and is unknown to jurors before trial. Outside influence, in the form of information not in evidence, must come from a *non-juror.*

*Durbin,* 871 S.W.2d at 272 (emphasis in original). To warrant a new trial for jury misconduct, the Rosells had the burden to prove: (1) there was misconduct; (2) it was material; and (3) it probably caused injury. *See Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex.2000). Whether misconduct occurred is a question of fact for the trial court, and if there is conflicting evidence on this issue the trial court's finding must be upheld on appeal. *Id.; Pharo v. Chambers County, Tex.,* 922 S.W.2d 945, 948 (Tex.1996). Misconduct justifies a new trial only if it reasonably

appears from the record that "injury probably resulted to the complaining party." *Pharo,* 922 S.W.2d at 950 (quoting Tex.R. Civ. P. 324(a)). To show probable injury, there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment. *Id.* Determining the existence of probable injury is a question of law. *Id.*

█ The essence of the "outside influence" rule is to prevent outside information that affects the merits of the case from reaching the jury. The only evidence here is that the jury was told that they probably would be required to deliberate another day. While that information may have influenced the jury to agree to a verdict, the information was not of the type that would influence the verdict one way or the other. This was neutral information that would not persuade a juror to decide this case in any particular manner. Thus, the bailiff informing the jury of the court's schedule was not misconduct. Further, the juror testimony that jurors traded answers on issues is testimony about deliberations and is not evidence of outside influences. *See Golden Eagle Archery,* 24 S.W.3d at 372. Consequently, we resolve the Rosells' sixth issue against them.

## PUNITIVE DAMAGES

In their eighth issue, the Rosells complain that the trial court did not award punitive damages. They argue that the jury's finding that Chad was seventy percent negligent does not preclude the award of punitive damages. They claim the trial court's reliance on section 33.001 of the Texas Civil Practices and Remedies Code was erroneous. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (providing "a claimant may not recover damages if his percentage of responsibility is greater than 50 per-

cent"). The Rosells argue that section 33.002 exempts exemplary damages from the comparative negligence statute. *Id.* § 33.002(c) (Vernon 1997) (providing that chapter 33 does not apply to "a claim for exemplary damages").

█ The exemption in section 33.002 is meant to prevent the reduction of punitive damages by the percentage of responsibility of the claimant. However, it does not change the settled rule that a plaintiff must show himself entitled to actual damages before punitive damages are recoverable. *Travelers Indem. Co. v. Fuller,* 892 S.W.2d 848, 852 (Tex.1995). Because the jury found Chad seventy percent negligent, the Rosells were not entitled to any actual damages. Therefore, they were not entitled to any punitive damages. *See id.* Accordingly, we resolve the Rosells' eighth issue against them.

## CONCLUSION

Having resolved the Rosells' issues against them, we affirm the trial court's judgment.