COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-09-013-CV

 

LAURA HALL SOLOMON                                                       APPELLANT

 

 

                                                   V.

 

T & M CONTRACTORS, INC.                                                    APPELLEE

D/B/A
T & M CONSTRUCTION 

 

                                              ------------

 

            FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








The trial court denied
Appellant Laura Hall Solomon=s motion for new trial in her negligence suit against Appellee T &
M Contractors, Inc. d/b/a T & M Construction (AT&M@), and she
now appeals.  In one issue, Solomon
argues that the trial court erred by denying her motion for new trial because
the jury=s verdict was against the great weight and preponderance of the
evidence.  We disagree, and, accordingly,
we affirm.

Solomon filed suit for
damages against the Woods of Bedford, TMG Milestone Management, and T&M for
injuries she sustained from falling into a hole at the Woods of Bedford
apartment complex.  She claimed that as an
invitee, she was owed a duty of care by the defendants and that they were
negligent by (1) creating and maintaining an unreasonably dangerous condition,
(2) failing to warn her of the dangerous condition, (3) failing to place
warning signs and barriers around the dangerous condition, (4) failing to
correct the unreasonably dangerous condition, and (5) failing to properly
maintain the premises.








Solomon settled with the Woods of Bedford and TMG Milestone Management
and proceeded to trial in her suit against T&M.  The jury charge asked whether T&M and
Solomon were negligent, and, if so, what percentage of negligence was
attributable to each.  The charge
instructed the jury that T&M was negligent with respect to the condition of
the premises if the condition posed an unreasonable risk of harm; it knew or
reasonably should have known of the danger; and it failed to exercise ordinary
care to protect Solomon from the danger, by both failing to adequately warn her
of the condition and by failing to make the condition reasonably safe.  The jury was further instructed that
negligence as to Solomon meant the Afailure to use ordinary care; that is, failing to do that which a
person of ordinary prudence would have done under the same or similar
circumstances or doing that which a person of ordinary prudence would not have
done under the same or similar circumstances.@ 

The jury found Solomon 80% negligent and T&M 20% negligent.  The trial court entered a judgment in
accordance with the jury=s verdict,
ordering that Solomon take nothing. 
Solomon filed a motion for new trial, which the trial court denied.

Standard of Review








When the party with the burden of proof appeals from a jury=s failure to find, the party must show that the failure to find is
against the great weight and preponderance of the evidence.[2]  A complaint that a jury answer is against the
overwhelming weight of the evidence must have been raised in a motion for new
trial.[3]  We review a trial court=s denial of a motion for new trial for abuse of discretion.[4]


When conducting a factual sufficiency review, a court of appeals must
not merely substitute its judgment for that of the trier of fact.[5]  The trier of fact is the sole judge of the
credibility of witnesses and the weight to be given to their testimony.[6]

Analysis








Contributory negligence is negligence with a Acausal connection with the accident that but for the conduct the
accident would not have happened,@ as opposed to negligence that Amerely increases or adds to the extent of the loss or injury
occasioned by another=s
negligence.@[7]  In Texas, a plaintiff may be
contributorily negligent and still recover, but not if her percentage of
responsibility for her damages is greater than 50%.[8]  The jury Ais given wide latitude@ in apportioning responsibility for an accident, and even if a
different percentage could be allocated under the evidence, Aan appellate court may not substitute its judgment for that of the
jury.@[9]  

The jury in this case found that both T&M and Solomon were
negligent and apportioned 80% of the responsibility for the accident to
Solomon.[10]  Solomon argues that the jury=s finding was against the great weight and preponderance of the
evidence because T&M failed to take measures to make the condition
reasonably safe, failed to warn visitors at the complex about the dangerous
holes by way of barricading the areas, and failed to give any other verbal or
visual warning.








At trial, the evidence established that T&M was hired to remove
the Woods= previously
existing wooden carports and replace them with metal carports supported by
steel beams.  In order to set a new post,
T&M would cut a 19"B22" square in the concrete and auger a four-foot hole inside the
square.  Upon leaving the work site each
evening, T&M employees were supposed to cover the holes with a four-by-four
section of three-quarter-inch thick plywood and barricade the area using yellow
caution tape and sawhorses or cones.  The
parties introduced conflicting evidence about whether this was properly done.

Solomon testified that on June 28, 2005, some time after 5:00 p.m.,
she drove to the apartment complex to meet her then boyfriend (now husband),
daughter, and son-in-law, all of whom lived in the complex.  She testified that when she arrived at the
Woods on the day in question, she noticed that Athere was some construction project going on@ involving the replacement of parking spaces.  She also testified that even before she
arrived at the Woods, she was aware that construction would be ongoing because
she had seen signs to that effect.








Solomon found an available parking space that was next to the space in
which her boyfriend had parked his truck. 
She noticed in the spot a piece of plywood with nails sticking out of
it.  There were other parking spaces
available, but Solomon decided to park in the space with the board.  She testified that the parking space was not
barricaded or taped off.  The nails in
the board were curved, but she believed they could do damage to her tires.  She Apossibly@ could have
parked in the space without driving over the board, but she decided to move the
plywood before parking there.  She stopped
her car, got out, and lifted the plywood. 
Upon doing so, she stepped forward and fell into a large hole that had
been covered by the plywood, injuring herself. 
At trial, she acknowledged that she was holding the board in such a way
that she could not see the ground in front of her as she walked.  After her accident, she did not report what
happened to anyone, never asked her boyfriend to report it to anyone, and never
asked her daughter to report it to anyone.

Solomon=s husband
Jim testified on her behalf.  He stated
that after Solomon=s accident,
he took her to the hospital, and that when he returned, someone had covered the
hole again with the same plank of wood. 
He did not see any caution tape or barricade marking the area.








Trey Murchison, the T&M
employee in charge of the T&M work crew, testified by deposition.  He stated that at the end of every work day,
he made sure that the crew cordoned off any area where holes had been dug and
that he had checked the area before the crew left that day.  Solomon=s attorney showed him a photograph taken by Carol Harms, the fiancée
of a resident of the complex.  The
photograph showed a parking space with a piece of plywood in it that had no
barricading or caution tape marking it off. 
When shown the picture, Murchison acknowledged that no barricades were
visible in the picture but testified that such a hole is still secure as long
as the plywood is covering it.  T&M=s owner, Tim Giles, was also asked about the picture.  He stated that the only time that the area
was not barricaded or taped off was while his crew was working.  He asserted that Harms=s picture showed no barricades or tape because it was taken while the
crew was there working.

Murchison further testified
that on the day of Solomon=s injury, he received a call from Giles telling him that someone had
reported an accident.  He testified that
he met the apartment complex maintenance man, Brian James, and the two men
inspected the area where holes had been dug that day and found no uncovered
holes and no evidence of an accident. 
When he went to the site, he saw that the barricades, cones, and plywood
were all still in place.

Lisa Crumpton, the community
director of the Woods, testified that on the day of Solomon=s accident, a contractor in the complex to do countertop refinishing
came into the office and mentioned an accident had occurred out on the
property.  He did not give an exact
location or name of the injured person. 
Based on that report, Crumpton went out onto the property to see where
the accident might have happened, but she did not see anyone or any
problem.  She called James and someone
with T&M to report the possibility of an accident.  She testified that no one ever contacted the
office to report Solomon=s
accident.  She further stated that she
periodically inspected the property during the time construction was ongoing
and that she never saw any areas that should have been barricaded but were not.








James testified that he and
Murchison inspected the area after learning that an accident had occurred and
that he did not see any holes uncovered. 
He further testified that he had never seen any areas that had not been
properly cordoned off during the time of the construction.  He testified that there were, however, some
holes in the street, that those were covered with plywood, and that some of
those did not have barricades.

Tommy Woodell, a former
resident of the Woods, and Harms, his fiancée, testified by deposition.  Woodell testified that he is involved in his
own lawsuit resulting from injuries he allegedly suffered from falling into a
hole in the parking lot two days before Solomon=s accident.  Both Woodell and
Harms testified that Woodell was injured when the two attempted to move a piece
of plywood in a parking space with nails sticking out of it.  Both testified that it was next to a space in
which a neighbor with young children often parked, and that because they did
not want anyone to get hurt by the nails, they decided to move the board.  Harms testified that the area with the board
was not surrounded by barricading or caution tape.  When Woodell lifted the board and took a step
forward, he fell into the hole that the board had been covering.  Harms admitted that Woodell had been drinking
before his accident.








Harms testified that the next
day, she went out to the work crew and told the person pointed out to her as
the foreman about what happened.  She did
not describe Woodell=s injuries
but did tell the person that Woodell had fallen into a hole.  She testified that the man must have heard
her because she was about four or five feet away but that he only stared at her
and did not say anything to her.  That
same day, Harms took photographs of the hole in which Woodell allegedly fell,
the board that had been covering it, and the area around it.  She took pictures of the work crew about a
week later.

Both Harms and Woodell
testified that they were aware of the work being done in the parking lot.  Woodell testified that some areas were
barricaded but that the area of the plywood-covered hole in which he injured
himself was not barricaded or taped off. 
Harms also testified that the area was not barricaded.  Woodell=s accident occurred on a Sunday, and he could not say whether tape had
been up around the area earlier in the day or if someone had removed the
tape.  When asked if he would have
stepped in the hole if he had not removed the plywood, Woodell responded, AThere would be no way to fall in the hole if you didn=t move the plywood.@








In Murchison=s deposition testimony, he denied that Harms told him about Woodell=s accident, testifying that he was not made aware of an incident
taking place on June 26, 2005, until he received a call from Crumpton informing
him that the apartment complex had received a letter from an attorney
representing Woodell.  Murchison
testified that the company did not use plywood with nails in it to cover holes
and that he had never seen plywood with nails in it covering a hole at the job
site.  Murchison was shown a picture,
taken by Harms, of a piece of plywood covering one of the holes, and the
plywood had nails in it.  Harms
identified the board in the picture as the one that Woodell had moved.  Murchison testified that he never saw such a
board covering any of the holes, and if he had, he would not have allowed it
because of the potential damage to his equipment.  When asked by T&M=s attorney, he agreed that the photograph did not show whether any of
the nails actually protruded through the board.

Solomon=s boss, Dr. Martin Wax, testified that she called him sometime after
her accident to tell him about her injury and that she would not be coming into
work the next day.  He testified that she
described what had happened as getting out of her car and Anot hav[ing] solid ground where she exited@; that it was Aa footing
issue@; and that she never told him that she lifted a board and stepped into
an exposed hole.








The dangerous condition was
the hole.  A question at trial was
whether T&M had taken steps to make the condition reasonably safe.  T&M contended that it used new pieces of
plywood to cover the holes and that it barricaded the area surrounding the
hole.  It also contended that even
without barricades, the hole was safe as long as the board was covering it.  Woodell supported that claim when he admitted
that there would be no way to fall in the hole without moving the board.








Solomon argued that the hole
was not made safe by T&M=s efforts because the area was not barricaded and the plywood had
nails in it.  But it was not the nails
themselves that caused Solomon=s injury.  Rather, it was her
decision to move the board because of the nails so that she could park in the
space where the board was located.  She
admitted at trial that other parking spaces were available and that if she had
been worried about driving over nails in the board, she could have parked
elsewhere without having to move the board. 
The picture of the nail-ridden board that Solomon used to show the
reasonableness of her actions was taken the day before Solomon=s accident, did not show nails protruding through the board, and was
not established as being the same board later covering the hole that caused her
injury.  Solomon acknowledged that it was
possible that she could have parked in the space without driving over the
board; rather than attempt it, she made the decision to move the board.  Both Woodell and Solomon testified that they
would not have fallen if they had not moved the boards covering the holes.  The jury also heard Solomon agree with the
statement of T&M>s attorney
that when she picked up the board, she held it in such a way that it obstructed
her view of where she was walking and that Ait=s a good
idea to be able to see where you are going and know where you are stepping
before you start walking.@

Solomon seems to argue that
T&M should have known that covering the hole with a board with nails in it
was not enough to make the area safe because by the time of her accident,
another person had been injured when he attempted to move a board with nails in
it, and T&M had been informed of the problem.  Thus, T&M should have known that covering
the holes with a board with nails would create a condition that could lead to
injury.  But even assuming that such
knowledge would make T&M more negligent than Solomon, the jury heard conflicting
testimony about what T&M knew and when, and the jury was free to accept one
version and disregard another.  And
although Solomon contends that T&M made the condition of the hole more
dangerous because a person like her would see nails protruding from the board
and believe that it constituted a dangerous condition for everyone at the
complex, the evidence does not support a finding that she acted out of concern
that third parties might be injured.  Her
professed concern was for her tires.








The juryCthe sole judge of the credibility of testifying witnesses[11]Cheard conflicting evidence about whether T&M properly barricaded
parking areas where work was being done and whether it used new plywood or
reused old plywood with protruding nails. 
From the evidence at trial, the jury could have concluded that although
T&M should have done a better job with safety measures and was negligent in
its failure to do so, Solomon would not have been injured absent her own
negligence and that she was primarily responsible for her accident.  The jury could have believed, based on the
evidence presented, that Solomon was aware of construction going on involving
work on the parking spaces, that she had other parking spaces available to her,
that the board was not dangerous to drive over, that if she had not taken it
upon herself to move the board, she could not have fallen in the hole, and that
she could have avoided the accident by watching her step.  Its finding was not so against the great
weight and preponderance of the evidence so as to be manifestly unjust.[12]  We overrule Solomon=s sole issue.

Having overruled Solomon=s sole issue, we affirm the trial court=s judgment.

PER CURIAM

PANEL: 
DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: 
December 31, 2009











[1]See Tex.
R. App. P. 47.4.





[2]Cropper
v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988); see
Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).  





[3]Tex.
R. Civ. P. 324(b)(2)B(3); In
re M.S., 115 S.W.3d 534, 547 (Tex. 2003). 






[4]Dolgencorp
of Tex., Inc. v. Lerma, 288 S.W.3d 922, 926 (Tex. 2009); Hogue
v. Propath Lab., Inc., 192 S.W.3d 641, 647 (Tex. App.CFort
Worth 2006, pet. denied).





[5]Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).





[6] Id.





[7]Kerby
v. Abilene Christian College, 503 S.W.2d 526, 528 (Tex.
1974); see also Young v. Thota, 271 S.W.3d 822, 829B30
(Tex. App.CFort
Worth 2008, pet. filed) (discussing contributory negligence and causation
versus exacerbation of injuries).  





[8]See Tex.
Civ. Prac. & Rem. Code Ann. ' 33.001 (Vernon 2008).





[9]Rosell
v. Cent. W. Motor Stages, Inc., 89 S.W.3d 643, 659 (Tex.
App.CDallas
2002, pet. denied).





[10]See
Kerby, 503 S.W.2d at 528; see also Elbaor v. Smith, 845 S.W.2d 240,
245 (Tex. 1992) (holding that the trial court should have included a requested
contributory negligence question in the jury charge because there was some
evidence that without the plaintiff=s conduct, the complained-of
injury might not have occurred).





[11]Golden
Eagle Archery, 116 S.W.3d at 761.





[12]See Rosell,
89 S.W.3d at 659 (noting that jury has wide latitude in apportioning
responsibility for an accident).