**SOUTHERN PIPE LINE CORPORATION,**
Appellant,

v.

**Ernest R. DEITCH et ux., Appellees.**

No. 506.

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 19, 1970.

Rehearing Denied March 19, 1970.

Prichard, Peeler & Smith, C. Edwin Prichard, Jr., J. R. Keeling, Corpus Christi, for Southern Pipe Line Corp.

Fredric Johnson, Sinton, for appellees.

## OPINION

GREEN, Chief Justice.

This appeal is from a judgment in a suit wherein appellant Southern Pipe Line Corporation is condemning the surface estate of one acre of land in the southwest corner of a tract of 171 acres owned by appellees. (See sketch) The purpose of the taking is

Sketch of appellees' land showing location of the one acre tract in SW corner, at intersection of the two roads.

[A1535]

the continued use of the acre tract as a terminal pumping station and storage facility, a use to which it had been put by appellant since July 1948. The one acre had been leased to appellant by the then owner of the land on July 1, 1948 for ten years,

with an option to renew for an additional ten years, which option was exercised by appellant in 1958. This lease was due to expire July 1, 1968. The parties were unsuccessful in negotiating an extension, and condemnation proceedings were filed on May 22, 1968. Following the hearing before condemnation commissioners, and pending trial on appeal to the county court, appellant took all necessary steps to take said acre of land on June 21, 1968. The one acre is separated from the remainder of appellees' property by a fence, and the larger tract was being used by appellees as a stock farm. Appellees purchased the 171 acres in 1963, subject to the lease on the one acre portion.

The parties stipulated that appellant had the right to condemn and that all jurisdictional requirements had been met, and that the only matters in controversy were: (1) the market value of the one acre condemned; (2) whether or not the tract taken is to be considered a part of the larger tract owned by appellees or as a separate tract; (3) if it is to be considered a part of a larger tract, the damages, if any, to the remainder of the property not taken.

The jury, in answer to special issues, found (1) that the value of the one acre at the time of the taking was $800.00; (2) that the one acre tract and the sixty acres of appellees adjoining were both reasonably adaptable to homesite use; (3) and (4) that the difference in the value of the remainder of appellees' land, exclusive of the one acre taken, immediately before and immediately after the taking was $3700.00. Appellant has appealed from the judgment based on such verdict.

Appellant's Points of Error Nos. 1 and 2 are based on its contention that the evidence showed as a matter of law that the one acre was, because of its use, a separate and distinct tract from the remainder of appellees' land, and that the court erred in overruling appellant's objections to the evidence pertaining to diminution in value of such remainder, and in submitting issues to the jury concerning such remainder. Point

of Error No. 3 raises the related proposition that appellees did not produce any probative evidence that the two tracts, i. e. the one acre and the remaining 170 acres, were being used as a unit or that they were reasonably adaptable to use as a unit.

The paramount issue here involved is whether the taking of the one acre tract should be considered a whole taking, so that the compensation should be restricted to its market value, or whether the one acre should be considered as a part of the larger tract, thereby involving the possibility of a diminution in value to the remainder caused by the taking. Art. 3265, subds. 2 and 3.

In a suit to condemn a portion of an owner's land, where there is an issue raised of whether the owner is entitled to severance damages to the remainder of his property, it is the law of Texas that where the tract taken is a self-sufficient economic unit independent of the remainder of the tract, with no unity of use of the two tracts, the amount of the owner's recovery should be ascertained by considering such portion alone, and not as a part of the entire property, and neither severance damages nor benefits to the remainder of the property are to be considered, nor is evidence thereof admissible. State v. Meyer, Tex.Civ.App., Corpus Christi, 391 S.W.2d 471, affd. Tex.Sup.Ct., 403 S.W.2d 366; City of Tyler v. Brogan, Tex.Civ.App., Tyler, 437 S.W.2d 609, n.w.h. But where the land being taken is a non-sufficient economic unit and is not independent of the remainder, i. e., when there is a unity of use between the part taken and the remainder, it is to be considered as a portion of the entire property, and severance damages are permissible. Rayburn, Texas Law of Condemnation, § 135, § 163, and Pocket Supplement; Calvert v. City of Denton, Tex.Civ.App., Ft. Worth, 375 S.W.2d 522, wr. ref. n.r.e. Tracts under common ownership which are physically separated may be united by their being used as a part of a single unit of operation, or, conversely, tracts of land which are physically contig-

uous may be considered separated from one another for these purposes if they are put by their owners to separate and distinct uses whereby they are operated by their owners not as a unit, but separately and distinctly. Rayburn, § 160(1), p. 455; Vol. 29A C.J.S. Eminent Domain § 140, p. 589.

The *City of Denton* case, supra, was a suit to condemn an easement over a ten feet by seventy feet strip out of one lot. Appellants were the owners of that lot and four additional adjoining lots. The trial court limited appellants' recovery to the value of the strip condemned plus damages to the remainder of the one lot from which the easement was taken. The principal issue before the appellate court concerned the right of appellants to recover damages to the remainder of all five lots as a single tract of land, rather than to be limited to the remainder of the single lot. It was stipulated by the parties in the trial court that there were no physical divisions between the five lots; that each lot was acquired by appellants in separate transactions at separate times from different vendors, and were rendered separately for taxation; a single residence house is situated on each of four lots, occupied by separate tenants; that the fifth lot is devoted to business use by one of appellants. It was further stipulated that the highest and best use of the property would involve the use of the five lots as a single tract and that the owners have sustained damages to the remainder of the property considered as a single tract additional to the damages to the single lot.

We quote as follows from the opinion of Judge Langdon, speaking for the Court, in reversing and remanding the judgment:

"The primary question before this court and the basic one in all cases involving severance damages is what constitutes a single tract of land as distinguished from separate ones. Under the authorities the answer does not depend upon artificial boundaries between tracts as may be reflected in the owner's chain of title or as may appear upon maps or plats. It would not in our opinion depend upon whether the owner acquired the tract under consideration in one or several transactions or rendered and paid taxes on them as single tracts or as a unit. Nor in our opinion would the determination of the question necessarily depend upon the uses to which the property was being devoted at the time.

\*   \*   \*   \*   \*   \*

"The question of what constitutes a 'single' tract is not wholly dependent upon whether the tracts under consideration are physically contiguous. Such tracts may be separate ones if used separately. On the other hand tracts which may be physically separated from one another by railroads, highways, land or other barriers may constitute a single tract if devoted to an integrated unitary use *or if the possibility of their being so combined for a unified use in the reasonably near future is such as to affect market value.*

\*   \*   \*   \*   \*   \*

"Texas Jurisprudence in its section under Eminent Domain states in effect that the value of land is to be confined to the actual use to which it is put by the owner only in those cases where there is an absence of any evidence showing its adaptability for another use will give it a greater value. 22 Tex.Jur.2d 274, § 173 and continuing in the same text, *'Not only the actual use made of the property, but also any use to which the property is adapted and might be put,* should be taken into account in estimating its market value. In general, the best or most valuable use to which condemned property is adapted is to be considered in fixing its value, and not the condition in which the owner has maintained the property or the use to which it may be applied at the time; this rule is applicable not only to the property taken but also to any remaining portion thereof.' 22 Tex.Jur.2d 277, 278, § 174 and authorities cited. See

also 29 C.J.S. Eminent Domain § 160, p. 1024; 18 Am.Jur. 878, 879.

*"Stated another way, value may reflect not only the use to which the property is presently devoted but also to that use to which it may readily be converted.*

\* \* \* \* \* \*

"It is a general rule that the value of land condemned is not to be estimated simply with reference to the condition in which the owner has maintained it or for the use to which it is at the time applied, but with reference to any use to which it is reasonably adapted. 29 C.J.S. Eminent Domain § 160, p. 1024.

*"Where the tracts or lots are contiguous and the issue of 'separateness' is raised, the inquiry is whether they are of such dissimilar character as to require valuation, if at all, for entirely different uses and therefore as distinct or separate parcels, in which event they will not be treated as a single tract.*

"Admittedly the divisions between the five lots is merely nominal. The mere adaptability of parts to different uses and their devotion to such uses under the circumstances would not negative their character as a single parcel. When a parcel of land consisting of contiguous and adjoining tracts shown on official maps or plats as lots constitute an entire parcel used for one general purpose by the owner a condemnation proceeding should embrace all injuries caused to the entire tract. The uses to which the lots in question were devoted are not so divergent as to negative treatment as a single tract." (Emphasis added)

On June 21, 1968, the date of the taking of the one acre by appellant as the result of this suit, the one acre had been used by appellant separate from the remainder of appellee's property for over 19 years. This was by virtue of a contract of lease, due to expire in 10 days on July 1st, 1968. After that date, except for the condemnation, appellee would have the acre to use again in connection with the remainder of his land.

■ The evidence showed that appellee's land was within two miles of the city of Sinton, and was situated on two improved roads, one paved and the other caliche, in an area that had gone to one to ten acre residential sites. Appellee's evidence as testified to by appellee and his expert realtor witness Crow was that the highest and best use of the one acre as the expiration of the lease would be its combined use with the sixty acres west of Peters Creek for acreage development into one to five acre residential tracts. The effect of the evidence of appellee and Crow was that such property was adaptable to conversion to such use. Notice the extract in the above quotation from *City of Denton* that "Stated another way, value may reflect not only the use to which the property is presently devoted but also to that use to which it may readily be converted."

■ We are of the opinion that we can consider that "present use" of the one acre being condemned, on the date of the taking, June 21st, to be the use for which it was best adapted and which the owner intended that it should be put to upon the termination of the lease within 10 days. Appellee testified that when he purchased the property in 1963, he took into consideration the fact that the lease would end in five years. Crow, with reference to this matter stated:

"Q In other words, you did not—you don't feel that the ten days that it had lease to go would affect the value of this property?

A No.

Q In a purchaser's mind?

"A No. Not in that short period of time, no sir.

Q In other words, if it had had a year to go, it would have had more affect?

A Well, let's put it this way, if I had shown the land today to a purchaser

and there was ten days for it to expire, we wouldn't get into a contract. He wouldn't make up his mind probably for ten days. It is not long enough.

Q And even if you went into the contract today, it would be more than ten days before it would actually close out and you would actually get it?

A Yes, sir."

We hold that the evidence does not show as a matter of law that the taking of the one acre tract was a whole taking so that compensation to appellee should be restricted to its market value. Appellant's Points 1, 2 and 3 are overruled.

Appellant in its fourth and fifth points of error raises the contention of no evidence and factual insufficient evidence to support the jury's answer to special issue No. 2. That issue inquired whether the one acre tract and the adjacent sixty acres were both on June 21, 1968 reasonably adaptable to use as homesites within the immediate future or within a reasonable period of time. The jury answered that they were both reasonably adaptable to homesite use.

We have already discussed some of the evidence concerning adaptability. The testimony of appellee and Crow was to the effect that the 20 acre tract at the northwest corner of appellee's property would not suffer damages, since, though it was adaptable for development, it was far enough away that it would not be affected by appellant's use of the one acre. In addition, the evidence showed that the 90.22 acres east of Peters Creek (see accompanying sketch) because of it being low land, and subject to frequent flooding and overflow, and because of its proximity to oil development, was not adaptable to homesite development. But there was testimony, especially from Crow, that the sixty acre tract was especially adaptable to such use, and that the one acre in the corner, after the lease expired in ten days and it was

cleared of the pumps, tanks etc. placed on it by appellant, would readily unite with the remainder in such adaptability. We have copied some of Crow's testimony in that respect above. Issues of fact were raised concerning the matter inquired of in the second special issue by reason of the testimony of appellant's witnesses to the contrary, but such issues were for the decision of the jury. The fourth and fifth points of error are overruled.

Point of Error No. 6 reads:

"The Trial Court erred in overruling the objection of the Appellant to the Charge of the Court wherein Appellant objected to the inconsistency between Special Issue No. 2 and Special Issues Nos. 3 and 4, in that Special Issue No. 2, inquiring about adaptability for unity of use as homesites, was limited to only the tract being taken and the sixty (60) acres adjacent thereto, therefore limiting the inquiry as to unity of use to 61 acres, and yet Special Issues Nos. 3 and 4 inquired of a remainder of one hundred seventy (170) acres."

The objection (contained only in the Statement of Facts) to the court's charge on which this point is based was as follows:

"The defendant (obviously meaning plaintiff) further excepts to special issue No. 2, and that such issue inquires of the Jury concerning the reasonable adaptability of the sixty acre property adjacent to the one acre tract, and that such special issue is therefore in conflict with special issues 3 and 4, in that there is no limitation as to the area concerned in the remainder inquired of, concerning special issues 3 and 4."

Special Issues 3 and 4 requested a finding (3) of the market value of "Defendant's tract of land, exclusive of the one acre tract condemned" immediately before June 21, 1968, and (4) such value immediately after June 21, 1968.

It will be noticed that appellant did not object to the substance or the form of issues 3 and 4 (except as to his contention that appellee should be confined to the value of the one acre as discussed under the first three points of error.) Nor does it contend that the answers are excessive, or not supported by evidence. Its objection was strictly addressed to special issue No. 2, because of its inconsistency or, alleged conflict with issues 3 and 4. We have, under the 4th and 5th points of error, discussed the evidence which in our opinion justified the giving of special issue No. 2. It was not essential, in order for appellee to be entitled to severance damages, that the one acre of land be adaptable for joint use with the entirety of his property, if it was so adaptable as a unit with a substantial portion thereof.

In the absence of objections directed at the substance or form of the value issues, 3 and 4, we find that the trial court did not err in overruling appellant's objection as made. Appellant's sixth point is overruled.

Appellant's Seventh Point of Error reads:

"The Trial Court erred in overruling the objection of the Appellant to the Charge of the Court wherein the Appellant objected to the submission by the Trial Court of Special Issue No. 2, for the reason that it was substantially the same issue which had been submitted by the Trial Court in the first trial of this cause and then held by said Court to be immaterial to any issue in the case."

What ever rulings the trial court made in a previous trial of this cause were in no way binding or stare decisis in a second trial. The new trial had been granted by the trial court, and not by any appellate court on appeal. The present trial was de novo as to any prior proceeding. Appellant's 7th point of error is overruled.

Judgment affirmed.