**McKINNEY INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**CARLISLE GRACE, LTD. and Gordon M. Griffin, Jr. Revocable Trust, Appellees.**

No. 05-05-00625-CV.

Court of Appeals of Texas, Dallas.

April 24, 2007.

Robert H. Roeder, Richard Abernathy, Abernathy Roeder Boyd & Joplin, P.C., McKinney, for appellant.

Arthur J. Anderson, Winstead Sechrest & Minick, P.C., Dallas, Bill Boyd, Boyd, Veigel, Gay & McCall, Inc., McKinney, for appellee.

Before Justices WRIGHT, O'NEILL, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is a condemnation case. In three separate transactions, appellee Carlisle Grace, Ltd. acquired 89.714 acres of unimproved contiguous real property in Collin County, Texas. The parties referred to the property as the 56.43 acre tract, the 22.677 acre tract, and the 10.607 acre tract, with the latter two acquisitions also referred to as the 33.284 acres.

Appellant McKinney Independent School District (MISD) condemned the 56.43 acre tract for use as a high school. At trial, Carlisle Grace sought compensation not only for the 56.43 acre tract taken but also for damages to the 33.284 acres of "remainder" caused by the taking. It argued that the highest and best use of the entire property was for low density residential development. MISD argued there was no "remainder" because the 56.43 acre tract it condemned was a self-sufficient economic unit. It also argued there was no unity of use between the 56.43 acre tract and the 33.284 acres, contending the 33.284 acres were not reasonably adapta-ble to residential development because a substantial portion of that acreage was subject to flooding,[1] and Carlisle Grace did not prove it could get approval to develop the flood plain. MISD sought to compensate Carlisle Grace only for the 56.43 acre tract.

The issues were tried to a jury. It found that the 56.43 acres taken by MISD and the 33.284 acres not taken "were joined by a unity of use by the same proprietor into a single property consisting of the 89.714 acres in question." The jury found the market value of the 56.43 acre tract taken was $3,216,510, and found damages to the remainder in the amount of $1,189,903. The trial court entered judgment based on the jury's verdict.

At issue in this appeal is whether the evidence is legally sufficient to support the jury's finding that the 56.43 acre tract and the 33.284 acres were joined by a unity of use and, if so, the amount of damages to the remainder. The specific issue we are asked to decide is whether the evidence is legally sufficient to prove the 33.284 acres were reasonably adaptable to residential development and whether the damages to the remainder were excessive, even if the tract taken was not a single economic unit. MISD contends the evidence was so speculative that it amounted to no evidence. Because we conclude the evidence is sufficient, we affirm.

### STANDARD OF REVIEW

■ When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate there is no evidence to support the adverse finding. *See Croucher v.*

---

1. Much of the 33.284 acres is located within the 100–year flood plain defined by the Federal Emergency Management Agency (FEMA) or within the dam breach inundation area defined by National Resources Conservation Service (NRCS) (collectively referred to as the flood plain).

*Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In our review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). If the evidence would enable reasonable and fair-minded jurors to differ in their conclusions, the evidence is legally sufficient. *See id.* at 822. But evidence that is mere suspicion or surmise is no evidence. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993); *Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. and Nav. Co., Inc.,* 114 S.W.3d 573, 578 (Tex.App.-Austin 2003, pet. denied). Additionally, an expert's opinion testimony is not legally insufficient because it lacks market data to support the opinion. *See Tex. Elec. Serv. Co. v. Wheeler,* 551 S.W.2d 341, 342–43 (Tex.1977) (per curiam) (op. on reh'g). Lack of supportive market data tends to diminish the reliability of expert testimony, but this is a factor for the jury to consider in determining the credibility of the expert's testimony. *See id.*

Under this review, jurors are the sole judges of the credibility and weight of the witnesses' testimony. *City of Keller,* 168 S.W.3d at 819. Jurors may disregard even uncontroverted expert testimony unless the subject matter is one for experts alone. *Id.* at 820; *State v. ADSS Props., Inc.* 878 S.W.2d 607, 614 (Tex.App.-San Antonio 1994, writ denied).

### APPLICABLE LAW

### A. Evidence of Reasonable Adaptability

The trial court must initially determine whether evidence establishes a reasonable probability that existing restrictions on development will be lifted within a reasonable time when it decides whether to admit or exclude evidence that property is reasonably adaptable to a particular use. *City of Austin v. Cannizzo,* 153 Tex. 324, 267 S.W.2d 808, 814–15 (1954). Evidence of probable future changes in those restrictions and valuation of property based on that probability is not inadmissible merely because there are restrictions on development. *State v. Kinsloe III,* 716 S.W.2d 699, 702 (Tex.App.-Corpus Christi 1986, no writ). We will not reverse the trial court's decision to admit or exclude evidence of reasonable adaptability unless appellant shows an abuse of discretion. *Cannizzo,* 267 S.W.2d at 814–15. In this case, MISD does not argue the trial court abused its discretion by admitting the evidence. Instead, it complains that the evidence is legally insufficient. And a party may challenge the sufficiency of evidence presented through testimony even though the party does not question the admissibility of that testimony. *See Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997) (party may raise sufficiency of evidence of expert testimony without objecting to admissibility of testimony).

### B. Unity of Use

*McLennan County v. Stanford,* 350 S.W.2d 208, 209 (Tex.Civ.App.-Waco 1961, no writ) stated the general rule for determining whether property is a single tract of land or separate tracts:

> Where separate, but contiguous tracts are integral parts of an entity under common ownership in such physical and functional relationship that they are joined by unity of use by the same proprietor into a single property, they will be treated as a whole in assessing damages to the remainder in the taking of a part.

*Id.* (citations omitted). *See also Austin v. Capitol Livestock Auction Co.,* 453 S.W.2d 461, 463 (Tex.1970) (basis for damages to

remainder tract is unity of use and unity of ownership). Property has a unity of use if the tracts are "devoted to an integrated unitary use or if the possibility of their being so combined for a unified use in the reasonably near future is such as to affect market value." *So. Pipe Line Corp. v. Deitch,* 451 S.W.2d 814, 818 (Tex.Civ.App.-Corpus Christi 1970, writ ref'd n.r.e.); *see Calvert v. City of Denton,* 375 S.W.2d 522, 524–25 (Tex.Civ.App.-Fort Worth 1964, writ ref'd n.r.e.).

## C. Fair Market Value

██ In Texas condemnation law, market value properly reflects all factors that buyers and sellers would consider in arriving at a sales price. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 185 (Tex.2001); *Cannizzo,* 267 S.W.2d at 815. The Texas Supreme Court stated:

In the willing seller-willing buyer test of market value it is frequently said that all factors should be considered which would [citation omitted] reasonably be given weight in negotiations between a seller and a buyer. [citations omitted] This would exclude consideration of purely speculative uses to which the property might be adaptable but wholly unavailable but would permit consideration of all uses to which the property was reasonably adaptable and for which it was, or in reasonable probability would become, available within a reasonable time.

*Cannizzo,* 267 S.W.2d at 814.

██ In determining market value of property taken and not taken, the jury should base its award on the highest and best use of the property. *See So. Pipe Line Corp.,* 451 S.W.2d at 818–19 (determination of damages to remainder does not depend upon uses to which property devoted at time if possibility of tracts being combined for unified use in reasonably near future affects market value). When the highest and best use of land is disput-

ed, the jury decides which use is appropriate when it determines market value. *See ADSS Props., Inc.,* 878 S.W.2d at 614.

## EXISTENCE OF AND DAMAGES TO THE REMAINDER

In its first and second issues, MISD argues the evidence is legally insufficient to support the jury's finding of the existence of and damages to the remainder.

## A. Expert Testimony

### Carlisle Grace's Engineering Expert

██ Carlisle Grace's engineering expert, William Anderson, testified that the 33.284 acres were reasonably adaptable to residential development. MISD first argues Anderson's opinion was based on speculation and unfounded assumptions and constituted no evidence because he did not conduct engineering and hydrology studies to show that the flood plain was reasonably adaptable to development. It was undisputed that Carlisle Grace did not conduct the studies required to obtain governmental approval to develop in the flood plain. MISD also argues its experts rebutted Anderson's opinion with undisputed evidence that the 33.284 acres were not reasonably adaptable to residential development because there was no possibility the necessary approvals would be given absent the appropriate engineering and hydrology studies. Without these studies, MISD argues, the evidence is conclusive that the City would not consider reclamation of the flood plain or dam breach areas, would not rezone those areas for residential development, and would not issue the necessary permits for either reclamation or redevelopment. Essentially, MISD argues, without the engineering and hydrology studies, Carlisle Grace offered no evidence the property is a single economic unit reasonably adaptable to residential use.

But, the law does not require Carlisle Grace to show that the use had already been approved. Instead, it must show that the 33.284 acres were reasonably adaptable for development. *See Cannizzo*, 267 S.W.2d at 814–15; *State v. Tigner*, 827 S.W.2d 611, 613 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (expert appraiser could base opinion restrictions would be lifted on vast experience in real estate market without polling homeowners about approval to lift restrictions). And here, Carlisle Grace did not contend that the entire 33.284 acres was adaptable to residential development. To the contrary, it argued only that seven to ten acres of the 33.284 acres would possibly be developed and the rest would be used to provide amenities that did not require construction in the flood plain.

Anderson testified he considered the 89.714 acre tract as one property and that the 33.284 acres in the flood plain contributed to the value of the 56.43 acre tract because the low land offered a buffer from nearby developments and provided an opportunity to create amenities such as ponds, sports courts, and hike and bike trails that prospective buyers find desirable. He concluded the highest and best use of the entire tract was residential development. In fact, Anderson testified that when William Carlisle initially contacted him about the feasibility of developing the 56.43 acre tract, he suggested that Carlisle purchase the adjoining property for several reasons, including gathering density, open space for amenities, sanitary sewer availability, and drainage. At that time, Anderson did not know MISD was seeking to condemn the 56.43 acre tract for a high school.

Anderson discussed two similar properties in the vicinity of the 89.714 acre tract. One is immediately south of the subject property and had been rezoned by the City to allow single-family residential development in flood plain land. Anderson was involved in the rezoning on one of those projects. Anderson described his extensive experience in developing similar properties and obtaining approvals from municipalities for development in a flood plain. He testified that, based on this experience, his evaluation of the subject property, and his review of the City's documents for development of similar properties, a portion of the 33.284 acres could be developed without requiring a FEMA reclamation of flood plain land, with the remaining portion used to develop amenities such as hike and bike trails, sports courts, and ponds.

MISD contends *Urban Renewal Agency of City of Austin v. Georgetown Savings & Loan Association*, 509 S.W.2d 419 (Tex. Civ.App.-Austin 1974, writ ref'd n.r.e.), supports its position that Anderson's testimony constituted "no evidence" and is on point. We disagree. In *Urban Renewal*, the landowner whose property was subject to condemnation, offered evidence that the property was suitable for development as an office site although construction of an office building was prohibited by city codes because it would require construction in a creek bed. The court stated that the landowner's entire case "was centered on the proposition that the entire tract was suitable for use and development as an office site" and the witnesses testified on value based on this assumption. *Id.* at 420. But the landowner did not offer any evidence, other than this assumption, that it was reasonably probable that city codes would be changed to permit construction in the creek bed. *Id.* at 421.

In this case, unlike in *Urban Renewal*, Carlisle Grace's engineering expert testified about the underlying data he used to produce his development feasibility report for the property. He stated that the City's comprehensive plan for the property showed future land use of the property as

low density residential. And Anderson described his extensive experience with zoning issues and FEMA reclamations, testifying that one hundred percent of his FEMA reclamation applications have been approved. When asked whether it was reasonably probable that his plan for development of the 33.284 acres would be approved, Anderson said, "Yes," and explained that he and his firm "have experience with zoning of this similar nature in reclamations," "a tremendous amount of experience in doing flood studies," "this particular tract of land [does] not have a heavy forested area adjacent to the creek [that could cause flooding problems]," and "[the plan does not call for a] FEMA flood plain reclamation." Consequently, *Urban Renewal* is distinguishable.

We did address a similar issue in *City of Richardson v. Smith*, 494 S.W.2d 933 (Tex. Civ.App.-Dallas 1973, writ ref'd n.r.e.). That case involved a partial taking with no claim of damage to the remainder. The issue was whether the part taken must be valued as a separate tract or as a part of the whole. The evidence showed that the part taken could best be used as a part of the whole and would be less valuable if used separately. We concluded that omission of the added value which the part taken would have when used in connection with the remaining land would deprive the landowner of the full compensation to which he was entitled and held the trial court correctly excluded the testimony of the city's appraisers concerning the value of the part taken as a separate and unrelated tract. *Id.* at 936, 938.

■ In summary, Anderson testified the 56.43 acre tract was more valuable as a

part of the entire 89.714 acre tract because the 33.284 acres would contribute valuable recreational and green space to the development. MISD's experts disagreed about the feasibility of developing the 33.284 acres for residential use and concluded the 56.43 acre tract was a self-sufficient economic unit. However, opinions are not legally insufficient simply because the opinions contradict one another. Instead, the opinions raise fact issues which the jury must resolve. *See City of Keller*, 168 S.W.3d at 820 (it is province of jury to resolve conflicts in evidence); *ADSS Props., Inc.*, 878 S.W.2d at 614 (jury may accept or reject opinions of expert witnesses).

We conclude Anderson's testimony was not speculative or based on unfounded assumptions.

**Carlisle Grace's Expert Appraisers**

MISD raises similar complaints about the legal sufficiency of the testimony of Carlisle Grace's expert real estate appraisers, David Bolton and Wendell Pyles. Additionally, MISD contends the evidence will not support Bolton's testimony concerning the market value of the 33.284 acres.

*Bolton*

■ Bolton testified he valued the 89.714 acre tract as a single property. He described the process he used to appraise the 89.714 acre tract and how he determined that the 56.43 acre tract and the 33.284 acres were a single economic unit.[2] He explained how the 33.284 acres contributed to the enhancement of the 56.423 acre tract.

---

**2.** MISD objected when Bolton was asked whether it was physically possible to develop the 89.714 acre tract as low density residential, contending that Bolton had not been qualified to give this opinion. But Bolton testified he relied on the engineer's report and

conclusions for engineering matters. Additionally, MISD does not raise this as an issue on appeal. But even if it had been raised, any error in admitting Bolton's testimony was harmless because the same evidence came in through other means.

Bolton also testified about the fair market value of the 89.714 acre tract. He described the comparable sales he reviewed and how he adjusted their values to reach his opinion about the fair market value of this property. He concluded that the 89.714 acre tract had a fair market value of $65,000 per acre, or $5,831.410, before the taking. He testified the fair market value of the remainder prior to the taking was $2,163,950. He estimated the fair market value of the remainder after the taking at $1,000 per acre, resulting in $2,130,666 in damages to the remainder.[3]

MISD argues Bolton's opinion is speculative because he did not locate any comparable sales with similar characteristics found on the subject property. But MISD's appraiser used three of the same comparables Bolton used; he just had a different opinion. And comparable sales are just that; they are not required to be identical. *Estate of Sharboneau*, 48 S.W.3d at 182 (under comparable sales analysis, appraiser finds data for sales of similar property, makes upward or downward adjustments to sales prices based on differences in subject property); *Harris County Appraisal Dist. v. Kempwood Plaza Ltd.*, 186 S.W.3d 155, 159 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (discussing comparable sales method). Moreover, whether an expert's appraisal is based on non-comparable sales is an issue for the trial court when determining admissibility of the expert's opinion concerning the market value of the property. *See City of Garland v. Joyce*, 462 S.W.2d 86, 88 (Tex. Civ.App.-Waco, 1970, writ ref'd n.r.e.) (holding opinion testimony of sales should have been excluded because opinion not based on comparable sales). And here, MISD does not complain about the admissibility of Bolton's testimony.

MISD also argues Bolton's appraisal assumed the 33.284 acres would be used for an "amenity package" that included water features and playgrounds available for the exclusive use of the homeowners. It argues this assumption was wrong for two reasons and, as a result, Bolton's testimony constitutes no evidence: the City does not allow any construction in the dam breach inundation area without consent of the adjacent landowner or a hydrology study showing the reclamation would not affect any surface area; and the City's park ordinance requires the developer to dedicate 15 acres of the 33.284 acre tract for use as a public park.

Although MISD argues his assumptions were wrong, there was other evidence that supported Bolton's assumptions. First, MISD called the City's assistant engineer, Michael Hebert, as a witness to testify about the City's ordinances with regard to the flood plain engineering issues and their applicability to the property. On cross-examination, Hebert testified about the City's ordinance that prohibits construction in the dam breach inundation area without consent of the adjacent landowner or a hydrology study showing the reclamation would not affect any surface area. He testified it was possible to build a ball field and hike and bike trails in the floodway without any reclamation, provided no fill material was added, or to build a lake in that area to capture excess water. And he testified that if the engineering guidelines are met, an application for reclamation has a 100 percent chance of approval. Additionally, Anderson, Carlisle Grace's engineering expert, testified he did not seek approval of his plan from adjacent landowners because their approval was only required if he raised the water level, which

---

3. The jury returned a verdict of $3,216,510 for the 56.43 acre tract taken by MISD, or $57,000 per acre, and $1,189,903 for damages to the 33.284 acres not taken by MISD, or $35,750 per acre, within the values testified to by Bolton.

his plan did not do. Finally, and with regard to the issue whether a portion of the property would have to be dedicated as a public park, the City's director of planning testified that the City's park director frequently chooses to accept a cash payment in lieu of the dedicated park land and that the decision is generally based on whether the land is suitable for use as a park.

In summary, Bolton based many of his conclusions on Anderson's engineering report, which we previously concluded was not based on speculation or unfounded assumptions. Bolton also described in detail how he reached his opinion about the fair market value of the property. We conclude Bolton's testimony was not based on speculation or unfounded assumptions.

*Pyles*

Pyles testified the City retained him in the year 2000 to appraise the 89.714 acre tract for possible condemnation. His appraisal considered the 89.714 acre tract as one property and concluded the highest and best use was single family residential. MISD argues Pyles's opinion was speculative because he admitted that when he conducted his appraisal he was not aware that all of the 22.677 acre tract was within the flood plain. But whether Pyles considered that the 22.677 acre tract was within the flood plain when he prepared the appraisal in 2000 does not affect the legal sufficiency of his opinion. Instead, it goes to the weight to be given his opinion and was an issue to be resolved by the jury in this case. *See ADSS Props., Inc.,* 878 S.W.2d at 614. And Pyles echoed Anderson's opinion that the 33.284 acres enhanced the 56.43 acre tract because it could be used in the residential development as a greenbelt. We conclude Pyles's testimony was not based on speculation and unfounded assumptions.

We also conclude the testimony of Carlisle Grace's experts is legally sufficient to support the jury's verdict.

We overrule MISD's first issue.

## B. Carlisle Grace's Lay Testimony

MISD next argues the lay testimony of William Carlisle and Steve Goodman is legally insufficient to prove the 56.43 acre tract was an integral part of the 89.714 acre tract. It argues Carlisle's opinion was based on a hypothetical subdivision which he was allegedly planning to build. MISD contends the evidence showed Carlisle Grace had not taken any predicate steps to construct the subdivision, such as applying for a zoning change, conducting engineering and hydrology studies, and applying for the necessary permits and approvals. MISD argues Carlisle's testimony was so speculative as to constitute no evidence.

However, we do not reach this issue because we previously concluded the expert testimony is itself legally sufficient to support the verdict.

### DAMAGE TO REMAINDER

In its third issue, MISD argues the evidence is legally and factually insufficient to support the jury's damages award to the remainder because Carlisle Grace sought damages only for denial of access to the remainder resulting from the taking. In a subpart of this issue, MISD argues the trial court erred by failing to limit the jury's consideration of damages to denial of access. In a second subpart of this issue, MISD complains of charge error in the submissions to the jury on unity of use and single economic unit.

## A. Limiting Carlisle Grace's Claim to Denial of Access

MISD contends Carlisle Grace sought damages solely for denial of access to the 33.284 acres. Accordingly, MISD argues

the evidence is legally and factually insufficient to support the jury's damages award and the trial court erred by not limiting the jury's consideration of damages to the remainder resulting only from a denial of access. To support these arguments, MISD cites us to Carlisle Grace's pleadings and admissions, arguing Carlisle Grace judicially admitted it was seeking damages solely for denial of access. We disagree. We have reviewed the pleadings, admissions, and the reporter's record and conclude they do not support MISD's arguments that Carlisle Grace sought damages only for denial of access. Instead, the record shows Carlisle Grace sought damages generally for the diminution in the market value of the remainder as a result of the taking of the 56.43 acre tract. As a result, we do not need to decide whether the evidence is legally and factually sufficient to support the damages award under only a denial of access theory or whether the trial court erred by not limiting the jury's consideration of damages to only denial of access.

## B. Jury Charge: Single Economic Unit and Unity of Use

■ MISD also argues the trial court erred by failing to submit a jury question on the "extent of the single economic unit" despite a proper and timely request.

■ Rule of civil procedure 278 requires the trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. *See* TEX.R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992); *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex.App.-Dallas 2002, pet. denied). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *Rosell*, 89 S.W.3d at 653; *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex.App.-Dallas 2001, pet. denied). The trial court has

broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Rosell*, 89 S.W.3d at 653; *Toles v. Toles*, 45 S.W.3d at 263. This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. *Wright Way Constr. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 422 (Tex.App.-Corpus Christi 1990, writ denied) (op. on reh'g); *Rosell*, 89 S.W.3d at 653. Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. TEX.R. CIV. P. 278; *Wright Way Constr. Co.*, 799 S.W.2d at 422; *Rosell*, 89 S.W.3d at 653. When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Rosell*, 89 S.W.3d at 653; *Wal–Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex.App.-San Antonio 1998, pet. denied).

MISD requested the following instructions and question:

> You are instructed that "unity of use" means that portion of the property that is economically self[-]sufficient to support the highest and best use.
>
> An "economic unit" is that portion of a whole property that is economically self-sufficient to support a highest and best use independent of any remaining portion of the whole property.
>
> Do you find from a preponderance of the evidence that [the] tract taken by [MISD] is not a self-sufficient economic unit, independent of the remainder of the parent tract?

The trial court denied MISD's requested jury question and instructions and submitted the following:

> When property consists of separate tracts that are contiguous and are integral parts of a whole in such physical and functional relationship that they are joined by a unity of use by the same

proprietor into a single property, they will be treated as a whole in determining whether there have been damages to a remainder in the taking of a part of the whole. In determining "unity of use," you should consider the highest and best use definition above.

The court defined "highest and best use" as:

"Highest and best use" is the reasonably probable and legal use of vacant land, which is physically possible, appropriately supported, financially feasible, and results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability.

The jury was asked to answer the following question:

Do you find from a preponderance of the evidence that the 56.43 acres taken by [MISD] and the 33.284 acres not taken on August 29, 2003, were joined by a unity of use by the same proprietor into a single property consisting of the 89.714 acres in question?

The jury answered, "Yes."

MISD argues the charge should have asked the jury to determine whether the 56.43 acre tract was a self-sufficient economic unit. If the jury concluded it was, then, MISD argues, there is no remainder and the jury should not have considered whether there were damages to the remainder. We disagree.

It was undisputed that the 56.43 acre tract was a self-sufficient economic unit and that it was reasonably adaptable to residential development. But the proper inquiry is whether the tracts should be considered as a whole. The real issue here is whether the 33.284 acres contributed value to the 56.43 acre tract such that they should be considered as one property. *Richardson*, 494 S.W.2d at 936. As we stated in *Richardson*, if the highest and best use of a whole tract is to develop and use it as a whole, then the part taken may be valued at less than its true worth if it is considered separately from the remaining land and not as part of the whole. *Id.* And, as the supreme court stated:

[W]hen the portion of the land taken by the State, considered without reference to the remainder, cannot be considered an independent economic unit reflecting the highest and best use of the property and would thus deprive the land owner of adequate compensation for the part taken if considered solely as severed land, ... the market value must necessarily be determined by considering some portion or all of the remainder in order to construct an economic unit.

*State v. Windham*, 837 S.W.2d 73, 76 (Tex. 1992).

Based on our examination of the evidence and case law, we conclude the trial court did not abuse its discretion by denying MISD's requested jury instructions and question.

We overrule MISD's third issue.

We affirm the trial court's judgment.